## Quillen v. Commonwealth.

Nov. 19, 1940.

Watt M. Prichard, Judge.

Arthur T. Bryson for appellant.

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—Affirming.

Clifford Quillen was convicted in the Boyd circuit court under an indictment charging him with the theft of an automobile belonging to Clifford Parkinson and sentenced to five years in the penitentiary. He has appealed from the judgment insisting upon a reversal of same (a) because the court admitted incompetent evidence over his objections and prejudicial to the issues, and (b) the evidence is insufficient to sustain a conviction. We will consider these points in the order named.

Clifford Parkinson, who resided in the state of Indiana, testified that he came to the city of Ashland, Boyd

County, Kentucky, on the 9th day of August, 1939, at about 7 o'clock P. M. and parked his automobile on 13th street. He and his wife went to a restaurant and when he returned to the place where he had parked his automobile it was missing, and he immediately notified the Ashland Police Department. About January 1, 1940, Parkinson was notified by the Police Department to come to Ashland for the purpose of identifying an automobile which the police department had located and believed to be Parkinson's automobile that had been stolen from him. He came to Ashland on January 3, 1940, and identified the automobile as being the one stolen from him on the date mentioned above. He said the engine and body number had been changed and the radiator had been worked over. He still had the keys that belonged to the automobile that had been stolen from him and the keys to the lock and door fitted the automobile identified by him as the one that had been stolen from him, and was the same color, gunmetal gray, and of the same type of tires. He also identified the car by a small dent in the left fender. Mr. Parkinson was rigidly cross-examined as to the method and means of identifying the automobile as being the one that had been stolen from him and, notwithstanding the changes made indicated above, he seemed to be very positive that it was the same automobile.

Tom Sparks testified that he was employed by the appellant as a mechanic in appellant's garage and on the evening of August 9, 1939, while he and appellant were driving over the streets in the city of Ashland, appellant noticed Parkinson's automobile parked on the street and asked him, Sparks, to steal the automobile for him, and said that he would pay him $50. Sparks said the automobile was a 1939 model, two-door gunmetal Chevrolet and had Indiana license tags on it. He said he extended a wire from the coil to the starter and drove it to appellant's garage on Greenup avenue in Ashland. When he arrived at the garage appellant opened the door for him and he drove the automobile into the garage and left it there. He further testified that at the request of appellant, he, Sparks, changed the rear and transmission of the automobile and took the motor out of a black 1939 Chevrolet two-door sedan which had been wrecked and put the motor in the stolen automobile and then he and appellant started driving it

around over Ashland. He said appellant helped him make the changes in the automobile as indicated above. Sparks also testified that Harry Mirandi, another employee of appellant, helped him make the changes on the automobile. Mirandi was called as a witness for the Commonwealth and admitted that he was working for appellant in his garage at the time the automobile was stolen but refused to further testify upon the ground that it might incriminate him.

John McFarland who lived in Huntington, W. Va., and engaged in the automobile business, testified that about August 1939, he sold appellant a 1939 Chevrolet Deluxe black sedan, similar in body type to the stolen automobile in question. Some time later appellant came back to McFarland's garage with an automobile answering practically the same description as the one he had sold appellant except it was gray or slate color and appellant told the witness that the automobile had been repaired or repainted. McFarland further testified that later he saw the body of the automobile he had sold to appellant (the black Chevrolet) on the lot of Bruce Stapleton, and it appeared that it had been wrecked and the body badly damaged.

Frank Hopkins, another witness who lived in Huntington, W. Va., testified that he worked with the witness McFarland in August 1939, and remembered that McFarland sold appellant a black Chevrolet two-door sedan automobile which later had been wrecked and he had seen the body of that automobile on Bruce Stapleton's lot.

Charles Waugh testified that he had been engaged in paint and body work of automobiles for about five years and that General Motors (manufacturer of Chevrolet automobiles) has a plate on the cowl and carries a paint number and the paint number on a Chevrolet or Pontiac is 245 on gray color bodies and 252 on black bodies. The paint number on the automobile in question was No. 252, the number used on black cars instead of No. 245 used on the gray cars. He said on cross-examination that he obtained his knowledge of paint numbers representing different body colors from a book published by General Motors.

It is insisted that the evidence of the witness in reference to the paint number is incompetent, since he

testified from his book knowledge of paint numbers but failed to produce the book. It will be noticed that the witness testified to his knowledge of paint numbers after stating his experience in such line of work which indicated that he was competent to testify on the subject, and his statement that he obtained his knowledge from the book published by the manufacturer of the automobile in question was brought out by counsel for defendant, but defendant made no motion or request that the book be produced. We think this evidence was competent.

Other alleged incompetent evidence relates to the license plate number of the car. It is insisted that the license plates should have been produced as the best evidence. We think it competent for a witness to testify from his memory or knowledge of license plates numbers without producing in court the license plates, and this is particularly true when the number is not in dispute or in issue. We think this evidence was competent.

Without encumbering the record by a further detailed resume of the evidence it is sufficient to say that the evidence of a number of other witnesses tended to corroborate the witnesses whose evidence we have detailed.

The appellant did not testify in his own behalf nor offer any other witness, and the case was submitted to the jury on the evidence of the Commonwealth indicated above.

Lastly it is insisted that the evidence of the accomplice Tom Sparks was not sufficiently corroborated. To our minds the corroborative evidence of the accomplice is too obvious to require any extended elaboration. It will be noticed that Parkinson positively identified his automobile by the keys which fit the ignition and doors, the tires, and the dent in the fender. Also the evidence of various other witnesses strongly indicate that appellant had bought a black automobile similar in type to the alleged stolen gray automobile, and that the black automobile had been wrecked and the body left on a "dump" lot referred to by the witnesses. The circumstances strongly indicate and, the jury had the right to so believe, that appellant wrecked the black automobile purchased at Huntington, damaging the body beyond repair and, then took the motor from the wrecked auto-

mobile and put it in the gray one alleged to have been stolen and retained the body of the gray or stolen automobile. We think that the positive identification by Parkinson of his car corroborated by the evidence of other witnesses amply corroborated the accomplice witness and that the evidence is sufficient to sustain the verdict.

Finding no prejudicial error, the judgment is affirmed.